33 P.3d 537

**STATE of Arizona, Plaintiff–Appellee,**

v.

**Garcia Bail BONDS and Seneca Insurance Company, Appellants.**

**No. 1 CA–CV–00–0393.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 30, 2001.

204

Blumberg & Associates, by Bruce Blumberg and Joey Hamby, Phoenix, Attorneys for Appellants.

Richard M. Romley, Maricopa County Attorney, by Daniel Schlittner, Deputy County Attorney, Phoenix, Attorneys for Plaintiff–Appellee.

## OPINION

HALL, Judge.

¶1 Garcia Bail Bonds and Seneca Insurance Company (referred to collectively as "surety") appeal from the trial court's order forfeiting an appearance bond after Theodore Pineda ("defendant") failed to appear at a pretrial conference. Defendant was unable to appear in the Arizona case because he had returned to Colorado and been incarcerated there after a judge of the Superior Court in Maricopa County permitted him to return to Colorado and self-surrender on an unrelated fugitive complaint. Surety claims that these circumstances constitute reasonable cause excusing defendant's non-appearance in the Arizona case and that the bond should be exonerated. We agree and reverse.

## BACKGROUND

¶2 The defendant was arrested March 15, 2000 in Glendale, Arizona for local charges of theft of a firearm and misconduct involving weapons committed March 11, 2000 and two counts of forgery committed March 14, 2000. At the same time, defendant was arrested on warrants issued by the State of Colorado on July 23, 1999 and August 20, 1999 charging him with "DOC ESCAPE/FLIGHT; FLIGHT/ESCAPE."

¶3 Defendant appeared in court on the fugitive complaint on March 20, 2000 and bond was set in the amount of $20,000. The complaint contained the following language: "If [defendant] posts bond or is otherwise released from custody, He/She has permission from this court to self surrender in the requesting state." Defendant was released on appearance bond and surrendered to Colorado authorities on the fugitive complaint on or about April 25, 2000. On June 1, 2000, he was sentenced in Colorado to serve two years in prison. The bond posted on the fugitive complaint was exonerated.

¶4 On March 22, 2000, surety posted a $3,500 appearance bond for defendant, thereby securing his release on the Arizona charges. On March 24, 2000, the Maricopa County Grand Jury indicted defendant in

case no. CR2000–005100 ("the Arizona case") on three felony counts: forgery, theft, and misconduct involving weapons. Defendant waived his presence for arraignment and his attorney entered a not guilty plea on his behalf on April 17, 2000. When defendant did not appear for a pretrial conference on June 8, 2000, the court issued a bench warrant and set a bond forfeiture hearing. *See* Ariz. R.Crim. P. 7.6(c)(1). At the hearing held July 31, 2000, defendant's counsel argued that defendant was prevented from appearing on the Arizona case on June 8th because he was then imprisoned in Colorado after he self-surrendered in the fugitive case. After finding that defendant's departure from Arizona was "voluntary," the court ordered that the $3,500 bond be forfeited.

### DISCUSSION

¶ 5 We examine the evidence on appeal in the light most favorable to support the judgment of the trial court. *State v. Veatch,* 132 Ariz. 394, 396, 646 P.2d 279, 281 (1982). We review the trial court's order forfeiting the bond for an abuse of discretion. *State v. Affordable Bail Bonds,* 198 Ariz. 34, 36, ¶ 9, 6 P.3d 339, 341 (App.2000). We consider *de novo* the interpretation of the court rules governing bail bonds. *La Paz County v. Upton,* 195 Ariz. 219, 221, ¶ 4, 986 P.2d 252, 254 (App.1999).

¶ 6 Surety contends the trial court should have (1) found that defendant's incarceration in Colorado constituted reasonable cause for his non-appearance in Arizona, or (2) exonerated defendant's bond after he surrendered himself to Colorado authorities.

¶ 7 The release order in the fugitive complaint case that permitted defendant to leave Arizona and surrender himself to Colorado was contrary to the relevant portion of the release order in the Arizona case, which provided as follows:

> IT IS HEREBY ORDERED that the defendant be released as indicated below and comply with the following standard conditions ... during the pendency of this case.

### STANDARD CONDITIONS

....

(4) Not leave the state without permission of the court.

Neither defendant nor surety sought permission of the court for defendant to leave the state in the Arizona case.

¶ 8 Citing the obvious inconsistency in these orders, surety claims that defendant reasonably relied on the fugitive complaint release order when he left Arizona and self-surrendered in Colorado. In response, the state contends that defendant voluntarily left Arizona in violation of the release order in the Arizona case and that the violation is not explained or excused by his subsequent incarceration, which prevented him from appearing in Maricopa County Superior Court on June 8th.

### I. FORFEITURE

¶ 9 Whenever a person violates a condition of an appearance bond, Arizona law requires that the court schedule a hearing requiring "the parties and any surety to show cause why the bond should not be forfeited." Ariz. R.Crim. P. 7.6(c)(1). Appellants contend that the forfeiture order was contrary to Rule 7.6(c)(2), which provides:

> (2) *Forfeiture.* If at the hearing, the violation is not explained or excused, the court may enter an appropriate order of judgment forfeiting all or part of the amount of the bond, which shall be enforceable by the state as any civil judgment.

¶ 10 Numerous Arizona cases hold that the later incarceration of the defendant in another jurisdiction after release on bond on an Arizona case is not reasonable cause for failure to appear. For example, in *State ex rel. Ronan v. Superior Court,* 96 Ariz. 229, 232–33, 393 P.2d 919, 921 (1964), our supreme court ruled that the defendant's arrest and detention in another state two days after his scheduled court appearance in Arizona was not reasonable cause for his non-appearance. Also, in *State ex rel. Corbin v. Superior Court,* 2 Ariz.App. 257, 262, 407 P.2d 938, 943 (1965), the trial court had vacated an order forfeiting bond because the defendant was in federal custody on the day he failed to appear for trial. The court remanded the case

with directions to the trial court to permit proof of the dates of the offenses for which the defendant was confined. If any of the offenses were found to have been committed after the defendant's release on bond, the court directed that the order of forfeiture be reinstated. In *State v. Rocha,* 117 Ariz. 294, 572 P.2d 122 (App.1977), the defendant was allowed to remain free on bond pending appeal. While his appeal was pending, the defendant committed and was convicted of a federal narcotics offense for which he was incarcerated. After his state court conviction was affirmed, the trial court ordered partial forfeiture of the cash bond posted by defendant even though he was unable to surrender to state authorities because he was still in federal custody. In rejecting defendant's claim that the partial forfeiture of his cash bond should be set aside as unduly harsh, we noted that defendant's "detention by the federal authorities was because of his own misconduct and is not excusable." *Id.* at 297, 572 P.2d at 125.

¶ 11 Based on these cases, the state asserts that the trial court's only recourse was to order forfeiture for the full amount of the appearance bond. *See State v. Rogers,* 117 Ariz. 258, 261, 571 P.2d 1054, 1057 (App.1977) ("[O]nce the court has determined there was no justification for the defendant's non-appearance and no reasonable cause has been shown for reduction of the bond, the court has no discretion other than to forfeit the bond in its entirety."); *see also State ex rel. Corbin,* 2 Ariz.App. at 261, 407 P.2d at 942.

¶ 12 Our case is distinguishable from these cases, however, because the offenses for which the defendant self-surrendered in Colorado occurred before defendant was arrested and released on bond in Arizona. *See State ex rel. Corbin,* 2 Ariz.App. at 261, 407 P.2d at 942 ("We do not herein pass upon the question of the presence or absence of jurisdiction in the Superior Court if it be established that the crime for which an absent defendant is being held was committed before he was released on the bond then in contention."). *See generally* Lee R. Russ, Annotation, *Bail: Effect on Surety's Liability Under Bail Bond of Principal's Incarcer-*

*ation in Other Jurisdiction,* 33 A.L.R.4th 663, § 5 (1984) (noting jurisdictions, including Arizona, that deny relief to surety when defendant is incarcerated in another jurisdiction for a crime committed after his release on bail). Taken together, these cases are simply applications of the generally accepted rule that in cases where a defendant's non-appearance is due to his own fault, the surety is not entitled to relief because the defendant's inability to appear is the result of his own voluntary act in committing the second offense and not an act of law preventing his appearance. *See Ward v. State ex rel. Carman,* 200 Okla. 51, 196 P.2d 856, 858 (1947), *cited with approval in State ex rel. Ronan,* 96 Ariz. at 233, 393 P.2d at 921.

¶ 13 Here, however, the Colorado offense for which defendant was imprisoned occurred before he was arrested in Arizona, and his subsequent incarceration was not the result of his committing a new offense. Indeed, his self-surrender and imprisonment in Colorado was an outcome specifically authorized by the fugitive complaint. Thus, the Arizona cases cited by the state are not controlling.

¶ 14 The state further contends that the forfeiture order should be upheld because the court merely permitted, but did not compel, defendant to self-surrender on the fugitive complaint. Forfeiture proceedings, even though instituted in criminal matters, are simply a streamlined substitute for a civil suit resulting from a breach of contract. *See, e.g., State ex rel. Ronan,* 96 Ariz. at 231, 393 P.2d at 920; *State v. Martinez–Gonzales,* 145 Ariz. 300, 302, 701 P.2d 8, 10 (App.1985); *Rogers,* 117 Ariz. at 259, 571 P.2d at 1055. Invoking the contractual doctrine of impossibility, the state claims the surety's lack of performance is not excused because defendant voluntarily left the state in violation of the release conditions in the Arizona case.

¶ 15 The state cites the nineteenth century case of *Taylor v. Taintor,* 83 U.S. 366, 21 L.Ed. 287 (1872), for the proposition that a condition of bail is rendered impossible, thereby excusing performance, only by an act of God, the act of the obligee, or the act of the law.[1] In *Taylor,* the defendant was ar-

---

1. As explained in *Taylor:*

Where the principal dies before the day of

rested in Connecticut for a criminal offense allegedly committed in that state. He was released on bail conditioned upon his appearance for subsequent court proceedings. Defendant then returned to New York where he was arrested upon a requisition from the governor of Maine for a burglary alleged to have been committed before the Connecticut offense. He was delivered to officers of the State of Maine where he was convicted and sentenced to a fifteen-year prison term. In refusing to reverse the judgment of the Supreme Court of Connecticut that affirmed the trial court's order forfeiting the bail, the Court relied on the "well-settled" principle that "if the impossibility be created by the [defendant] or a stranger, the rights of the obligee will be in nowise affected." *Id.* at 370. The Court found that the sureties were at "fault for the departure from Connecticut, and they must take the consequences." *Id.* at 373.

¶ 16 Assuming, without deciding, that the doctrine of impossibility as articulated in *Taylor v. Taintor* applies in Arizona,[2] the performance could be excused as an "act of the law" because the superior court, by permitting the defendant to leave the state and self-surrender in Colorado, interfered with the surety's obligations in the Arizona case in a manner that effectively rendered its performance impossible. The state, acting through the court, allowed the defendant to return to Colorado on a complaint charging him in bold letters with "DOC ESCAPE/FLIGHT; FLIGHT/ESCAPE."[3] Clearly, the expected outcome of defendant's invited return to Colorado was further imprisonment. Thus, unlike Connecticut in *Taylor*, Arizona was "at fault" in consenting to defendant's departure

to and incarceration in another jurisdiction. *See id.* at 374–75 ("We cannot hold that Connecticut was in any sense a party or consenting to what was done in New York."). Therefore, we conclude that the trial court erred when it found that the defendant's incarceration in Colorado was not reasonable cause for his non-appearance in Arizona.

## II. EXONERATION

¶ 17 Surety also claims that the $3,500 bond posted in the Arizona case should have been exonerated when defendant self-surrendered in Colorado on the fugitive complaint before he failed to appear for the June 8th pretrial hearing on Arizona's case. *See* Ariz. R.Crim. P. 7.6(d). We agree.

¶ 18 Effective December 1, 1998, the Arizona Supreme Court amended Rule 7.6, which governs forfeiture and exoneration of appearance bonds.[4] Before amendment, the provision of the rule regarding exoneration provided simply:

> At any time that the court finds that there is no further need for an appearance bond, it shall exonerate the appearance bond and order the return of any security deposited.

Ariz. R.Crim. P. 7.6(e)(1993).

As amended, the rule (renumbered as Rule 7.6(d)) now reads:

> d. Exoneration.
>
> (1) At any time before violation that the court finds that there is no further need for an appearance bond, it shall exonerate the appearance bond and order the return of any security deposited.

---

performance, the case is within the first category. Where the court before which the principal is bound to appear is abolished without qualification, the case is within the second. If the principal is arrested in the State where the obligation is given and sent out of the State by the governor, upon the requisition of the governor of another State, it is within the third. 83 U.S. at 369–70.

**2.** Our research discloses no case in which our supreme court has ever cited *Taylor*. In *State v. Affordable Bail Bonds*, 198 Ariz. 34, 37, ¶ 10, 6 P.3d 339, 342 (App.2000), we quoted *Taylor's* description of bail bondsmen's traditional authority over their principals.

**3.** The sparse record on appeal does not reflect the factors considered by the court in deciding that defendant, allegedly a DOC escapee from another jurisdiction, was bond eligible. *See* A.R.S. § 13–3961.01 (1982) ("A person shall not be ... admitted to bail after conviction of a felony offense for which the person has received a sentence of imprisonment....").

**4.** The impetus for these changes was a petition filed by the Professional Bail Agents of Arizona, Inc. *See* Amended Petition to Amend Rule 7.6 of the Arizona Rules of Criminal Procedure (filed Arizona Supreme Court July 24, 1997).

(2) If the surety, in compliance with the requirements of A.R.S. § 13–3974,[5] surrenders the defendant to the sheriff of the county in which the prosecution is pending, or delivers an affidavit to the sheriff stating that the defendant is incarcerated in this or another jurisdiction, and the sheriff reports the surrender or status to the court, the court may exonerate the bond.

(3) In all other instances, the decision whether or not to exonerate a bond shall be within the sound discretion of the court.

■ ¶ 19 The primary purpose of an appearance bond is to assure a defendant's appearance at the trial or other hearings. *State v. Nunez*, 173 Ariz. 524, 526, 844 P.2d 1174, 1176 (App.1992); *United Bonding Ins. Co. v. City Court of Tucson*, 6 Ariz.App. 462, 464, 433 P.2d 642, 644 (1967). An "appearance bond" is defined in Rule 7.1(b) as "an undertaking, on a form approved by the Supreme Court, to pay to the clerk of the court a specified sum of money upon failure of a person released to comply with its conditions." The only conditions of the appearance bond were that defendant make his court appearances and "hold him/herself amendable [sic] to the orders and process of the court." Therefore, defendant's return to Colorado as permitted in the fugitive case did not violate the conditions of his appearance bond in the Arizona case. At the time of the pretrial conference in Arizona on June 8th, defendant was incarcerated in Colorado and unable to appear in Arizona. These circumstances distinguish this case from *State v. Surety Ins. Co.*, 123 Ariz. 568, 570, 601 P.2d 331, 333 (App.1979), in which we did not release the surety from the bond because the defendant, who was permitted to leave Arizona and was then arrested in New Mexico as a fugitive, was released in time to make his appearance in Arizona.

¶ 20 The state acquiesced in the defendant's return to Colorado and defendant did not violate any condition of the appearance bond by leaving Arizona. If it chooses to do so, the state may re-obtain custody of the defendant on the untried indictment by following the procedures set forth in the Interstate Agreement on Detainers, found in A.R.S. § 31–481 (1970). There being no further need for an appearance bond, we conclude that surety is entitled to have the bond exonerated pursuant to Rule 7.6(d)(1).

¶ 21 Therefore, we vacate the order forfeiting the bond and remand to the trial court with a direction to exonerate the bond.

**5.** At the time of the rules amendment, A.R.S. § 13–3974 (1998) provided:

  A. A surety may be relieved from liability on an appearance bond if the surety:

  1. Surrenders the defendant into the custody of the sheriff of the county in which the prosecution is pending and the sheriff reports the surrender to the court.

  2. Delivers to the sheriff of the county in which the prosecution is pending an affidavit which states that the defendant is in the custody of the federal government, this or any other state or any county of this or any other state. On receipt of the affidavit, the sheriff shall confirm the custodial status of the defendant and shall report this status to the court.

  B. Upon report by the sheriff as provided in this section, the court may exonerate the bond and discharge the surety from further liability on the bond.

However, the legislature amended § 13–3974 in 1999 by deleting subsection A(2) and section B in their entirety. 1999 Ariz. Sess. Laws ch. 261, § 39. Neither party briefed, and we do not address, whether the legislative amendment to § 13–3974 effectively modifies Rule 7.6(d)(2).